The FIRST NATIONAL BANK OF McMINN COUNTY and Harold Fred Miller, Co–Executors of the Last Will and Testament of Charles C. Miller, Deceased; the First National Bank of McMinn County, Tennessee, and Thomas M. Boyd, Co–Executors of the Last Will and Testament of Allie Bess W. Miller, Deceased,

and

Harold Fred Miller

v.

William Bryan WALKER, Jr.

Supreme Court of Tennessee.

Nov. 3, 1980.

Robert L. McMurray, Cleveland, of counsel; Bell, Painter, McMurray, Callaway, Brown, Mashburn & Headrick, Cleveland, William P. Biddle, III, Athens, for plaintiffs–respondents and defendant–respondent.

Thomas B. Prickett, II, Oneonta, Ala., Larry B. Nolen, Athens, for defendant–petitioner.

BROCK, Chief Justice.

Charles Miller died on March 17, 1975, leaving an estate of approximately $800,-000.00 which by his last will and testament, dated October 4, 1972, was divided into two trusts, a "marital deduction" trust and a residuary trust. His wife, Allie Bess Walker Miller, was made the lifetime beneficiary of the marital deduction trust and was given a power of appointment over the corpus thereof. However, this power of appointment was limited by the following language:

"Such power of appointment shall be exercisable by my said wife exclusively and in all events but shall be exercisable only by specific reference to said power in her last will and testament."

At issue is the question whether Allie Bess effectively exercised the power of appointment thus granted by the language employed in her last will and testament, dated October 17, 1969. That language is as follows:

"I give, bequeath and devise all my property both real, personal and mixed to Charles C. Miller, my husband, but if he predeceases me, then I bequeath and devise my property, including all property over which I shall have any power of appointment at my death, to my nephew, William Bryan Walker, Jr., of Oneonta, Alabama, and to my husband's nephew, Harold Fred Miller, in equal parts. If either of said persons shall be deceased, then their share is to go to their next of kin."

The crucial question is whether Mrs. Miller's reference to " . . . all property over which I shall have any power of appointment . . ." is a sufficient compliance with the stipulation in her husband's will that her power of appointment " . . . shall be exercisable only by a specific reference to said power in her last will and testament." [1]

The Chancellor held that the power of appointment granted to Mrs. Miller had been effectively exercised; but, the Court of Appeals reached a contrary conclusion and reversed the decree of the Chancellor.

The real parties in interest are Mr. Bryan Walker, Jr., of Oneonta, Alabama, and Mr. Harold Fred Miller of Athens, Tennessee. If the power of appointment granted to Mrs. Miller was effectively exercised, upon her death the corpus of the marital deduction trust vested equally in Mr. Walker and Mr. Harold Fred Miller under the will of Mrs. Miller; but, if the power is held to have been not properly exercised, the whole of the corpus would be distributed to Mr. Harold Fred Miller under the residuary trust created by the last will and testament of Mr. Charles Miller.

The material facts have been stated by the Court of Appeals in an opinion by Judge Goddard as follows:

"Harold Fred Miller is the nephew of Charles Miller, deceased. For many years Harold and Charles were very close, and were jointly engaged in various business enterprises. In October, 1973, Charles and Allie Bess Miller adopted Harold as their son. A few days later they deeded him their very substantial farm. William Bryan Walker is the nephew of Allie Bess, but is in no way related to Charles. He was on good terms with both of them and saw them once or twice a year.

\* \* \* \* \* \*

"The proof shows that Charles made several wills. The first will was executed in 1964 and was drafted by Attorney Thomas Boyd. It contained a marital deduction trust with the power of appointment which provided:

"Upon the death of my said wife, the trustee shall pay and distribute the entire principal of trust A and any accrued, accumulated or unpaid net income thereof which would have been payable to my said wife had she lived, as she appoint by a provision of her will, specifically referring to this power of appointment (including the power in her to appoint all thereof to her estate and free of trust).

"After executing three codicils, Charles executed a new will in September, 1969, which revoked the 1964 will. The 1969 will contained, verbatim, the above quoted grant of a power of appointment. Then in October, 1969, Attorney Thomas Boyd drafted Allie Bess' last will and testament in which she devised and bequeathed 'all property over which I shall any power of appointment at my death' equally to the appellant and the appellee. Allie Bess' 1969 will revoked a prior will which contained no reference to a power of appointment. Finally, sometime around 1970, Charles changed attorneys, employing William Biddle in place of

---

1. Inherent in this question is another: Will the courts recognize the validity of and require compliance with a donor's requirement that the donee of a power of appointment must, to effect an exercise thereof, make "specific reference" to the power.

Thomas Boyd. In October, 1972, Charles executed his final will containing the previously quoted grant of a general testamentary power of appointment to Allie Bess.

"At trial, attorney Boyd testified that when he drafted Allie Bess' last will and testament he had a copy of Charles' 1969 will in his file which contained the marital deduction trust, and that he was aware that it granted her a power of appointment. He testified that he had no personal knowledge of who instructed him to draw Allie Bess' last will, since the instructions came to him through his secretary. He further testified that any instructions to him were always as a result of either a joint consultation with the Millers or a consultation with Charles alone. He was certain that the Millers were aware of the status of each other's will.

"In addition to the above, Boyd testified that it was the intent of Allie Bess to make the appellant and the appellee equal beneficiaries of her estate, and that in writing the will it was his intention to exercise the power of appointment granted to Allie Bess and Charles' 1969 will, because that was what she had wanted.

"Attorney William Biddle also testified at trial, which testimony will be summarized. Biddle had a special interest in estate planning to avoid federal and state death taxes. He drafted Charles' last will, at which time he was aware of Allie Bess' last will. Charles' major concerns were (1) to avoid as much tax as possible and (2) to provide for Allie Bess without giving her the estate outright. Biddle advised Charles that to qualify for the marital deduction he must give Allie Bess a general power of appointment over the marital deduction trust; but, that the power could be restricted by requiring a specific reference in her will to exercise it. If Allie Bess improperly exercised the power, Charles could designate the beneficiaries under his will to receive the corpus of the trust. Biddle specifically advised Charles that in his opinion the general reference in Allie Bess' will would not exercise the power granted in Charles' will since it required a specific reference."

Our first task, of course, is to ascertain, as best we can, the intent of the testator–donor of the power of appointment. Just what did Charles Miller mean by use of the words ". . . shall be exercisable only by specific reference to said power in her last will and testimony"? Did he mean a more specific reference than that employed by Allie Bess in her will by use of the words ". . . all property over which I shall have any power of appointment at my death . . . ."? We must determine that intent by making a fair assessment of the words used by the testator–donor in his will, considering the instrument as a whole, read in light of the circumstances known to the testator at the time the will was executed. *Locke v. Davis*, Tenn., 526 S.W.2d 455 (1975); *Cobb v. Stewart*, 225 Tenn. 85, 463 S.W.2d 693 (1971); *Ashley v. Volz*, 218 Tenn. 420, 404 S.W.2d 239 (1966).

We have no reported decision in this state dealing with the particular problem presented. The reported decisions in other jurisdictions, as might be expected, are not unanimous. Some have held that a donor's requirement that the donee make "a specific reference" to the donated power in order to effect its exercise, was intended merely to prevent an inadvertent exercise of such power; whereas, other courts have held that the donor in making such a requirement truly intends to require that the donee refer specifically to the donated power in order to effect an exercise thereof, hoping that the donee will fail to comply with this requirement with the result that the property subject to the power will pass under the will of the donor to recipients of his own choosing rather than to beneficiaries who might be appointed by the donee. Holding that the donor's intent in requiring a specific reference to the power donated was merely to prevent an inadvertent exercise thereof, are *Shine v. Monahan*, 354 Mass. 680, 241 N.E.2d 854 (1968); *McKelvy v. Terry*, 370 Mass. 328, 346 N.E.2d 912 (1976); *First Union Nat. Bank v. Moss*, 32

N.C.App. 499, 233 S.E.2d 88 (1977); *Cross v. Cross*, Mo.App., 559 S.W.2d 196 (1977). *See, also*, Restatement of Property, § 347 (American Law Institute). Cases holding that the donor intended a strict and literal compliance with his requirement that the donee exercise the donated power by specific reference thereto are *In Re Estate of Schede*, 426 Pa. 93, 231 A.2d 135 (1967); *Holzbach v. United Virginia Bank*, 216 Va. 482, 219 S.E.2d 868 (1975).

The cited cases as well as the instant case may be better understood if we digress for a brief consideration of certain aspects of the federal estate tax laws. Powers of appointment play an important role under the marital deduction trust provisions of the Internal Revenue Code, § 2056. In order to qualify for the marital deduction, the code makes it clear that any property which passes to a spouse without taxation should end up in that spouse's estate and, therefore, cannot be a "terminable interest." Thus, under Internal Revenue Code, § 2056(b)(5), if marital deduction property is placed in trust with income for life to the spouse, that spouse must have a power of appointment which will include the trust corpus in the subsequent estate under Internal Revenue Code, § 2041, that is, some *general* power of appointment.

It has become a popular estate planning technique for an owner of property to grant to the spouse a life interest and a general power of appointment in order to qualify for the marital deduction, but, to limit the manner in which it can be exercised. Under existing federal law and regulations, such a restriction does not deprive the power of its general character and, thus, does not defeat the marital deduction. Treasury Regulation, § 20–2056(b)–5(g)(4). Under this arrangement, the residual beneficiary under the will of the original grantor will receive the trust corpus unless the spouse has exercised the power of appointment *exactly as directed*. Obviously, this technique was attempted in the case at bar.

In *Shine v. Monahan, supra*, a husband by his will gave to his surviving wife the income for her life from a trust estate and a power of appointment of the remainder which was to be exercised "by a specific reference in her will to the full power hereby created." The wife, in turn, provided in her will that "all the rest, residue, and remainder of my property, including all property of which I have the power of appointment by virtue of any will or testament or *inter vivos* trust executed by my husband . . . I give, devise and bequeath to Margaret A. O'Toole of said Westwood." The Massachusetts court held that the language employed by the wife effectively exercised the power of appointment granted by her husband. In reaching its decision, the court quoted from American Law of Property, § 23.44, as follows:

" 'In a particular case [however] it may be quite reasonable to conclude that, although the donor, in creating the power, prescribed a specific formality, his effective intent was merely to require sufficient formality to insure against a hasty act by the donee. * * * More accurately it may be said that the formality prescribed by the donor is that which, in view of the donor's assumed purpose, approximates that specifically stated.' "

The court continued:

"We conclude that Edward O'Toole's intent was to prevent an inadvertent exercise of the power. Plainly, Mary L. O'Toole did not act inadvertently. She intended to exercise a power created by her husband in an inter vivos trust. She referred in terms to 'the power of appointment by virtue [of] any * * * inter vivos trust executed by my husband.' Having in mind the testator's purpose, this was the required specific reference.

"The appellants argue that the power was given for Federal tax reasons only, and that 'but for * * * [this] purpose * * he did not want any of his property to pass to or to be disposed of as part of his wife's estate.' They note that Mary L. O'Toole was the donor's second wife and not the mother of his children and that the trust property, in default of appointment, passed to the donor's grandchildren per stirpes. The appellants argue that

the general power was given solely to take advantage of the estate tax marital deduction, and that Mary L. O'Toole was given the most restricted interest possible consistent with the requirements of the Internal Revenue Code in the anticipation that the restriction might result in foiling an attempt to exercise it. We see no basis for so concluding from the donor's manifest intent to obtain the benefit of the marital deduction." 241 N.E.2d at 855–56.

In *First Union Nat. Bank v. Moss, supra,* the North Carolina court stated the problem before it as follows:

"We are called upon to construe the term in the will of Cecil Paul Moss which provided that his wife could dispose of the principal of the marital trust by 'specifically' referring to the power and term in the will of Helen R. Moss which devised any property over which she may have 'any power of appointment.' "

In deciding the issue, the court stated, in part:

"Appellants concede that she possessed a general power of appointment. Mr. Moss did not give his wife the minimum power over the marital share that he could have in order to obtain maximum tax benefits. Rather he gave her broad powers over disposition, limited only to the requirement of a specific reference in her will, which powers indicate confidence and trust in her judgment and ability to manage her property. The fact that even if the power were exercised, Mr. Moss elsewhere in his will made generous provisions for his children, the other natural objects of his bounty, lends support to the conclusion that he had no intention to restrict his wife unduly in the disposition of the property subject to the power of appointment.

\* \* \* \* \* \*

"Considering the circumstances surrounding the execution of both wills and language of both wills, we conclude that it was the intent of Mr. Moss, in requiring Mrs. Moss to effectively execute the power of appointment by 'specifically' refer-

ring to the power, to require that his wife in her will show her intent to devise both classes of property under her control; and we further conclude that it was the intent of Mrs. Moss to exercise the power of appointment by devising the remainder of her estate 'including any property or estate over which I have or may have any power of appointment.' The intent of Mr. Moss was to prevent Mrs. Moss from inadvertently exercising the power of appointment." 233 S.W.2d at 92–93.

It was, thus, held by the court that the power granted by Mr. Moss had been effectively exercised by Mrs. Moss.

In *Cross v. Cross, supra,* the restrictive language in the will of the donor was as follows:

"No testamentary power of appointment herein granted shall be deemed to have been exercised effectively unless the Last Will and Testament of the person to whom such power is granted makes specific reference to the power and to this will." 559 S.W.2d at 203.

The language employed by the donee in attempting to exercise the power was as follows:

"... All the rest, residue and remainder of my property and estate, whether real, personal or mixed, of whatsoever kind and wheresoever situate *including all property over which I have the power of appointment, which power I hereby* exercise...." [Emphasis theirs.] 559 S.W.2d at 199.

In the course of its opinion the Missouri court noted an argument made before it, to wit:

"... [T]hat a general testamentary power is often given a spouse so that a testamentary trust will qualify for the marital deduction, although the true intent of the donor is that the surviving spouse will not exercise the power and that the assets will pass in default of appointment. Thus, it is argued that specific requirements as to the manner of exercise are intended to be strictly complied with in order to avoid an exercise which would

defeat the donor's plans of distribution." 559 S.W.2d at 205.

After reviewing the pertinent authorities, the Missouri court concluded:

"Upon the basis of the foregoing authority and considering the specific language of the donor's will in this case, this court holds that the intent of the donor in this will was to prevent an inadvertent exercise of the power of appointment and that she did not intend to create a rigid and unyielding limitation upon the exercise of the power.... So holding, this court emphasizes that persuasive in this case is the fact that the donor's language as to the manner of execution of the power does not appear conjunctively with the grant of the power as it did in the *Holzbach* case.... Also, a contrary position would require a literal interpretation of the will which thwarts the intention of the testator viewing the will as a whole.... Likewise of importance are the dispositive scheme of the donor's will to make the property to all intents and purposes the property of Matthew, the broadness of the power created, and the fact that the gift in default is a generalized gift with no specific gift to identified persons. Other factual situations and other language might compel a contrary result, but on all of the facts and circumstances of this case, it seems clear that this court should hold that this language presents only a manifest intention to prevent an inadvertent exercise or to ease the burden of the executors in the distribution of her will if appropriate language had been used." 559 S.W.2d at 208–209.

In *Holzbach v. United Virginia Bank, supra*, the testator husband set up a marital trust in his will providing that his wife would receive the income therefrom for life and granted to her a power of appointment as follows:

" 'My wife, Judy H. Hall, is hereby given as to the corpus of the marital trust existing at her death, a general power of appointment, by specific reference to the powers granted herein, in her will, in favor of her estate, or, at her election, in favor of any other party. Should she fail to so appoint as to all or any portion of such corpus, then, upon her death such unappointed corpus, shall become a part of the Residual Trust to be administered as herein after provided.' " 219 S.E.2d at 870.

After enjoying the income from the trust, the surviving wife died eight years later leaving a will in which she provided:

" 'I give and bequeath unto my beloved sister, HAZEL H. HOLZBACH, provided she survives me, all of my estate, be it real, personal or mixed, or in which I may have a power of appointment of whatsoever nature, kind or description, and wheresoever the same may be located, in fee simple and absolutely.' " 219 S.E.2d at 870.

The Virginia court concluded that the power of appointment granted by the husband had not been properly exercised by the wife.

As did the Court of Appeals, we find the reasoning of the Virginia court to be particularly persuasive, in view of the particular facts in the case at bar. We, therefore, quote from that opinion as follows:

"Donor's will, read against the background of death tax laws, indicates that his purpose was to provide for his wife during her lifetime and, thereafter, for the remaindermen he named. For the benefit of both, he wanted to avail his estate of the maximum marital deduction permitted by federal estate laws and regulations. To accomplish this, it was necessary to couple his wife's life estate with a general power of appointment. Int. Rev.Code § 2056(b)(5). To validate the deduction, the power of appointment must be tailored to fit the rules prescribed by the tax regulations. A donor's requirement that the power must be exercised 'by specific reference to the power' does not defeat the deduction. Treas. Reg. § 20.2056(b)–5(g)(4). Donor adopted this requirement and then designated the beneficiaries to whom his property would pass in the event his wife failed to exercise the power in the manner required.

"... Appellees say that donor's motive was simply to protect his estate and the natural objects of his bounty against an 'inadvertent' exercise of the power by a nonspecific residuary clause. Appellant suggests that donor's motive was to qualify his estate for the tax deduction but, at the same time, to 'lay a trap for a unwary donee,' hoping that, for want of a 'specific reference ... in her will,' donee's attempt to appoint would fail and his estate would pass to beneficiaries of his choice rather than to donee's appointee.

"It is not necessary to our decision to guess which of these motives prompted donor. Indeed, one is not exclusive of the other. The requirement imposed is not unlawful; it does not offend public policy; .... When a donor imposes such a requirement, a donee, who enjoys no title to donor's property, can make no valid appointment affecting that property unless he complies with donor's requirement.

"Pursuing his right to dispose of his property as he saw fit, donor created a power of appointment and selected the conduit through which it should pass. Upon the exercise of that power, he imposed a lawful requirement that his donee manifest on the face of her will an intent to exercise the power by making specific reference to the power created in his will. While donee's will makes general reference to powers of appointment, it makes no specific reference to donor, to his will, or to the power created by his will. We hold that donee's will failed to comply with donor's requirement and, therefore, failed to make an effective appointment of donor's property." 219 S.E.2d at 872.

■ Considering Charles Miller's will as a whole and the facts surrounding its execution, we conclude that Charles intended to require of Allie Bess strict compliance with his requirement that in order to exercise her power of appointment she must make "a specific reference" to the power which he had granted her. We further conclude that the general reference contained in her last will and testament was not a compli-

ance with Charles' requirement, although we are satisfied, as found by the Chancellor, that Allie Bess intended the language that she used to be effective to exercise the power that Charles had granted to her.

We concur in the reasoning and conclusions reached by the Court of Appeals, to wit:

"The record shows that Harold Fred Miller was the primary beneficiary under Charles' will, his adopted son and the natural object of his bounty. On the other hand, William Bryan Walker's share of Charles' estate was reduced over the years—eventually down to $5,000. Charles limited Allie Bess' general power of appointment by requiring her to exercise it by 'specific reference to said power in her last will and testament.' He then named Harold beneficiary of the corpus of the trust in the event that she failed to properly exercise her power of appointment. The proof shows that Charles had the opinion of at least one attorney, William Biddle, that Allie Bess' attempt in her will to exercise the power was ineffective. We are of the opinion that the above recited facts tend to show that Charles intended all of his estate to eventually pass to Harold Fred Miller, the appellant. He required a specific reference to the power of appointment in the face of the opinion of Attorney Biddle that Allie Bess' will would therefore be ineffective to exercise the power."

We find of compelling force the evidence that Charles continued to require a "specific reference" after learning from an attorney schooled in estate planning and death taxes that the general reference to "any power of appointment" contained in Allie Bess' will dated 1969 probably was not an effective exercise of the power of appointment which he had granted to her.

■ Each case of this kind, of course, must be determined upon its own facts respecting the sometimes elusive intent of the testator. We believe our conclusion to be the correct one, but, it is limited to the peculiar facts of this case.

The decree of the Court of Appeals is affirmed. Costs are taxed against petitioner, William Bryan Walker, Jr., and surety.

FONES, COOPER and HARBISON, JJ., concur.