149 Ariz. 213 (1986)
717 P.2d 892
In the Matter of Oscar A. STROBEL, Inter Vivos Trust.
Grace E. GREENWOOD, a single person, Third Party Plaintiff-Appellee, Oscar A. Strobel, III, Real Party in Interest-Appellee,
v.
Marshall L. PETERSON and Jane Doe Peterson, husband and wife, Third Party Defendants-Appellants.
No. 18232-PR.
Supreme Court of Arizona, En Banc.
April 18, 1986.
Reconsideration Denied May 20, 1986.
*214 Ducey, Moore, Robinson & Bennett by William F. Bennett, Phoenix, for plaintiff-appellee.
Lewis & Roca by Charles M.H. Crehore, Susan M. Freeman, John P. Frank, Phoenix, for real party in interest-appellee.
Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, H. Jay Platt, Phoenix, for defendants-appellants.
FELDMAN, Justice.
PROCEDURAL OVERVIEW
This proceeding stems from a Petition for Construction filed by the Valley National Bank as Trustee under the Oscar A. Strobel Inter Vivos Trust. The petition sought instruction as to the distribution of one portion of a trust that had been subject to a general power of appointment vested in Willie Mae Strobel. The probate court ruling that Mrs. Strobel had not exercised the power was affirmed by the court of appeals. In the Matter of Strobel, 149 Ariz. 234, 717 P.2d 913 (App. 1985). We granted review under Rule 23, Ariz.R.Civ. App.P., 17A A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 12-120.24 and 12-2101(J).
FACTS
The facts are not in dispute. During his lifetime, Oscar A. Strobel created two trusts which were substantially identical except that one was testamentary and the other inter vivos. Upon his death, each trust was to be divided into two portions designated as trust "A" and trust "B". Strobel's second wife, Willie Mae Strobel, was to receive the income of both "A" trusts and both "B" trusts for her lifetime. Also, she could unconditionally invade the corpus of the "A" trusts at any time during her lifetime.
Upon Willie Mae Strobel's death the "B" trusts were to be held for the benefit of Oscar A. Strobel III, Strobel's son by his first marriage. Willie Mae Strobel was given a power of appointment over both "A" trusts, which she could exercise only by will and only by specific reference to the power being exercised. If Willie Mae Strobel failed to exercise the power of appointment, on her death the entire remaining principal of the "A" trusts was to be added to and become part of the respective "B" trusts, and thus ultimately to go to Oscar A. Strobel III.
The inter vivos trust was funded and came into existence on December 30, 1966. When Strobel died in December 1967, the payment of debts and estate taxes exhausted the remainder of his estate, and therefore the testamentary trust did not come into existence. No funds from it were ever paid to Willie Mae Strobel. However, for approximately thirteen years the bank, as trustee, regularly sent her checks drawn on the inter vivos trust account, identified on the checks as account number 6588A.
On December 6, 1974 Willie Mae Strobel executed a will which had been prepared for her by attorney Marshall Peterson. Paragraph Second provides:

Under the terms of the Will of my late husband, OSCAR A. STROBEL, which Will was dated November 20, 1965, a Trust was created for my benefit, *215 and under the provisions of such Trust, a portion of the estate of Mr. Strobel was set aside as a marital trust, and is designated by the Trust Department of the Valley National Bank of Arizona as Trust 6588A .. . Under the provisions of Paragraph D, page 4, of my deceased husband's Will, I am given a general power of appointment to dispose of, by Will, any or all of the principal of Trust A, together with any accrued and undistributed income thereon remaining at the time of my death, provided my Will makes specific reference to such general power of appointment. Pursuant to such general power of appointment, I do hereby specifically exercise the same, and do appoint all of Trust A to my estate to be disposed of under the provisions of this, my Last Will and Testament.
(Emphasis supplied.)
Willie Mae Strobel died on September 16, 1980, and her will was admitted to probate in Cause No. P-124770. Valley National Bank (VNB), the named trustee under both the testamentary and inter vivos trusts, was also the personal representative for Willie Mae Strobel's estate. In its capacity as trustee of the Oscar A. Strobel Inter Vivos Trust, VNB petitioned, under A.R.S. § 14-7201 "for instruction as to the distribution of the marital deduction portion and the residuary portion established by the terms of the Inter Vivos Trust." Marshall Peterson filed this petition as attorney for VNB, but thereafter withdrew and was replaced by other counsel. Responses to the petition were filed by Oscar A. Strobel III and Grace Greenwood. Greenwood argued that Willie Mae Strobel had properly exercised the appropriate power of appointment, that the residue of Trust "A" thus passed to Willie Mae Strobel's estate, of which Grace Greenwood was the sole beneficiary. Oscar A. Strobel III contended that the deceased had failed to exercise the power of appointment, and that therefore the residue of trust "A" lapsed and passed to trust "B". Grace Greenwood also filed a third party complaint against Marshall Peterson for negligence as the drafter of the will.
After discovery, Marshall Peterson, Grace Greenwood and Oscar A. Strobel III all filed motions for summary judgment. The probate court construed the inter vivos trust "to require that an exercise of the power of appointment must make specific reference to the ... power of appointment created by that trust, and not to any other power of appointment which may have been created at some other time, under some other document." The court concluded that in her will Willie Mae Strobel had not exercised the power of appointment under the inter vivos trust, and therefore judgment was entered for Oscar A. Strobel III pursuant to Rule 54(b), Ariz.R.Civ.P., 16 A.R.S. Finding that the third party malpractice claim presented controverted issues of material fact, the court denied the motions stemming from that action.
Only Attorney Peterson appealed. The court of appeals affirmed the trial court, stating that the donor of a power of appointment can restrict how it may be exercised. 149 Ariz. at 237, 717 P.2d at 916. Thus, the court reasoned, the question of whether a power of appointment has been validly exercised depends on whether the power was exercised in the manner prescribed by the donor, not on the donee's intent to appoint. 149 Ariz. at 237, 717 P.2d at 916. Because in this case the donative instrument (the inter vivos trust) required Willie Mae Strobel to exercise her power "by specific reference to ... this power" and because her will specifically referred instead to the power of appointment afforded by the testamentary trust agreement, the court of appeals concluded that the power was not validly exercised. 149 Ariz. at 238, 717 P.2d at 917.
RIGHT TO APPEAL
None of the parties has questioned Marshall Peterson's right to appeal the trial court judgment or to seek review of the appeals court opinion. Nevertheless, because the trial court adjudicated only the claims asserted by Oscar A. Strobel III (the residuary beneficiary) and Grace Greenwood (the appointed beneficiary) against *216 each other, we believe the issue of Peterson's right to appeal bears scrutiny.
The question of a party's right to appeal a judgment is not the same as the question of standing. Standing concerns a complainant's access to the court in the first instance. Standing in Arizona is not a constitutional mandate, since we have no counterpart to the "case or controversy" requirement of the federal constitution. Armory Park Neighborhood Association v. The Episcopal Community Services in Arizona, 148 Ariz. 1, 712 P.2d 914 (1985). It is, rather, a question of jurisprudential restraint, imposed to ensure that courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Id. These considerations require at a minimum that each party possess a legitimate interest in the outcome. Id.
The right to appeal a final judgment in matters of estates and trusts such as in the case before us is addressed in A.R.S. § 14-1304. That section adopts Rule 1, Ariz.R.Civ.App.P., 17A A.R.S., which governs who may appeal a final judgment. Rule 1 states: "An appeal may be taken by any party aggrieved by the judgment." See In re Wiswall's Estate, 89 Ariz. 68, 358 P.2d 172 (1960) (residual beneficiary not an aggrieved party under the circumstances). If the appellant is not an aggrieved party, the court is required to dismiss the appeal. Chambers v. United Farm Workers Organizing Committee, 25 Ariz. App. 104, 107, 541 P.2d 567, 570 (1975); Matter of Balcomb's Estate, 114 Ariz. 519, 562 P.2d 399 (App. 1977).
It has long been established in Arizona that there are two essential components to being an "aggrieved party":
1. There must be denial of some personal or property right to the party by the decree; and
2. Such denial must come as a direct result of the decree, and not merely as a result in some other proceeding of the application of a legal principle established in the decree appealed from.
Burmister v. City of Prescott, 38 Ariz. 66, 69, 297 P. 443, 444 (1931) (emphasis in original); see also Matter of Gubser, 126 Ariz. 303, 306, 614 P.2d 845, 848 (1980).
The success of Grace Greenwood's malpractice claim against Marshall Peterson depends on the trial court judgment that Willie Mae Strobel's will failed to exercise the power of appointment as was her uncontroverted intent. To recover damages in a legal malpractice action, Greenwood must show (1) the attorney's duty of reasonable care to the complainant, (2) the attorney's failure to meet the standard of care, (3) that complainant's injury was caused by the attorney's failure to exercise due care and (4) actual losses suffered. See Togstad v. Vesely, Otto, Miller & Keefe, 291 N.W.2d 686, 692 (Minn. 1980). The trial court decree conclusively establishes the third and fourth elements of Grace Greenwood's claim: but for the will's mistaken reference to the testamentary trust, the residue of trust "A" of the inter vivos trust would have passed to Grace Greenwood. The factual issues of causation and damage in the malpractice claim against Peterson are decided adversely to Peterson by the judgment Peterson seeks to appeal. The judgment does not merely provide precedent against Peterson, it concludes issues of fact and law against him. Had the trial court decreed the will to be effective, Grace Greenwood would have suffered no loss and Marshall Peterson could not be liable in the malpractice action.
We find that despite the uncertain pecuniary final outcome of the malpractice action, the judgment directly affects a legitimate interest of Marshall Peterson.[1] *217 He is therefore a party aggrieved by the judgment in favor of the donor's son and has the right to appeal that judgment.
EFFECTIVE EXERCISE OF GENERAL TESTAMENTARY POWER OF APPOINTMENT
The central issue raised by this case is whether a court of equity can give effect to a defective exercise of a power of appointment. The general rule is that to be effective the donee's exercise of the power of appointment must comply perfectly with any formal requirements imposed by the donative instrument. See 62 Am.Jur.2d Powers §§ 24, 39 (2d ed. 1972).
Except as stated in § 347, an appointment is ineffective unless the instrument of appointment
(a) is the type of instrument prescribed by the donor and is executed with the formalities effectively prescribed by him; and also
(b) is executed with the formalities prescribed by law for instruments of appointment.
Restatement of Property § 346 (1940) (hereafter Restatement § ____). See also Restatement (Second) of Property § 18.2 (Tent. Draft No. 6, 1983) (hereafter Draft Restatement § ____); 5 AMERICAN LAW OF PROPERTY § 23.43 (A.J. Casner, ed., 1952); 3 POWELL ON REAL PROPERTY ¶¶ 398-399 (1979).
Thus, as with improperly executed wills or deeds, it would seem that an appointment lacking the required formality is simply not valid. 5 AMERICAN LAW OF PROPERTY, supra at § 23.44. However, the English chancery courts developed a rule, now incorporated in the Restatement as § 347, that in proper cases equity will "aid the defective execution of a power." Restatement § 347 comment a; see also Draft Restatement § 18.3 comment a; 5 AMERICAN LAW OF PROPERTY, supra.
Restatement § 347 sets out the test for determining whether a defective appointment will be rescued by equity:
Failure of an appointment to satisfy formal requirements imposed by the donor does not cause the appointment to be ineffective in equity if
(a) the appointment approximates the manner of appointment prescribed by the donor; and
(b) the appointee is a wife, child, adopted child or creditor of the donee, or a charity, or a person who has paid value for the appointment.
A. Intent.
The trial court found that Willie Mae Strobel intended to exercise her power of appointment in favor of her sister. The parties do not quarrel with this conclusion. Strobel contends that her intent is irrelevant. The court of appeals agreed. 149 Ariz. at 237, 717 P.2d at 916. We believe that donee's intent is relevant to the question of equitable relief.
In addition to finding that the beneficiary is a person favored by a court of equity and that the defective appointment approximates the donor's required formality, the equitable rule also requires the court to determine that the donee intended to exercise the power. Thus, a third condition attaches:
If, for whatever reason, the donee did not intend to exercise the power, the [exception stated in § 347] has no application.
Restatement § 347 comment d. The rule confines equitable relief to situations in which the failure to conform to the prescribed formality is the result of oversight rather than intent not to exercise the power. 5 AMERICAN LAW OF PROPERTY, supra. The weight apportioned to donee's intent is not, however, constant. Clearly, if the donee complies perfectly with the formalities, doubt as to donee's intent to appoint will hardly be raised. The question of donee's intent is more decisive where there has been imperfect compliance, and the appointee falls within the ambit of the equitable exception. If the formality was *218 intended by the donor to prevent inadvertent or unknowing exercise, then the donee's intent is highly relevant. Cross v. Cross, 559 S.W.2d 196, 204 (Mo. App. 1977).
Of course, the donee's intent to exercise the power of appointment must be evident from the document itself. 62 Am.Jur.2d, supra, Powers §§ 42, 49. Thus, for example, if the donee's will makes "no reference at all to any power," and the donor required "specific reference to the power," the will cannot exercise the power of appointment, even under the equitable exception. Schwartz v. Baybank Merrimack Valley, N.A., 17 Mass. App. 169, 456 N.E.2d 1141, 1145 (1984). Furthermore, "no amount of intent by the donee will exercise a power in the face of a contrary intent by the donor." 5 AMERICAN LAW OF PROPERTY, supra, § 23.44 at 578 (emphasis in original). The court in Cross v. Cross, supra, applying the equitable exception, held a non-conforming exercise to be effective because the donee clearly intended to exercise the power and the defective exercise did not run contrary to the intent of the donor.
In the case at bench, we believe the words used in the appointment itself convey a clear intent that the power be exercised. No contrary evidence was offered. The donee's failure to comply perfectly with Strobel's required formality must be attributed to mistake, not lack of intent to exercise the power. Surely Willie Mae Strobel could not have intended to appoint her sister as beneficiary of trust "A" of the non-existent trust  one that never was funded, never came into existence and from which she never received a dime. The trial court's finding on intent was not only supported, but required by the facts. The next question we consider, therefore, is whether the beneficiary named by Willie Mae Strobel is a person favored by equity.
B. Is Grace Greenwood a Favored Beneficiary?
In recent years, the favored class of beneficiaries listed under Restatement § 347(b) (published in 1940) has been expanded to embrace "the natural object of the donee's affection." See Estate of McNeill, 463 A.2d 782, 784 (Me. 1983); Schwartz v. Baybank Merrimack Valley, N.A., supra; Draft Restatement § 18.3. We find this view preferable to adherence to the § 347(b) list which does not, for example, even include husbands in the favored class. We therefore follow the Draft Restatement and hold that the equitable exception may be applicable when the named beneficiary is a natural object of the donee's affection.
Because Grace Greenwood is the decedent's sister, she is a natural object of Willie Mae Strobel's affection. We hold, therefore, she is one of the class of favored beneficiaries who can qualify for application of the equitable exception to the general rule.
C. Approximate Compliance.
Whether a donee's defective appointment approximates the donor's required formality turns on the donor's purpose in imposing the formality. Draft Restatement § 18.3 comment c. Equity can grant relief from rigid enforcement only if such relief will not undermine the accomplishment of the donor's significant purpose. Id. To determine whether Willie Mae Strobel's attempted exercise approximated the required formality we must, therefore, establish (1) precisely what formality was required, (2) the donor's substantial purpose in imposing that formality, and finally (3) whether the defects in the attempted exercise would defeat that substantial purpose.
Article First of the inter vivos trust agreement states the required formality as follows:
(A) Upon the death of the wife, the entire amount remaining in Trust A (including net income accrued or collected but not distributed) shall be distributed to such person or persons, or to the estate of the wife, in such manner, including free of trust, and in such proportions as the wife may designate and appoint in her Last Will by specific reference to and exercise of this power.

*219 (B) Any part or all of Trust A which remains undistributed under the preceding provisions of this Article shall be added to Trust B and administered under the provisions hereof relating thereto.
(Emphasis added.) By the above language the valid exercise of the general power of appointment requires Willie Mae Strobel to specifically refer to the power in her will and exercise it in that will.
The requirement of specific reference to the donated power has been interpreted, depending on the facts of the case, as expressing one of two purposes. See First National Bank of McMinn County v. Walker, 607 S.W.2d 469 (Tenn. 1980). The presumptive purpose of the requirement is to ensure a considered and intentional, rather than an inadvertent exercise of the power. 5 AMERICAN LAW OF PROPERTY, supra, § 23.44; Matter of Estate of Smith, 41 Colo. App. 366, 585 P.2d 319, 321 (1978). In Shine v. Monahan, 354 Mass. 680, 241 N.E.2d 854 (1968), the donee made a general rather than a specific reference. The court nevertheless found the donee's language "plainly" not inadvertent, and concluded that it approximated the formality because it did not defeat the donor's purpose. Id. at 682, 241 N.E.2d at 855.
The facts in other cases have lent themselves to the interpretation that the specific reference requirement expressed the donor's intent to restrict the wife's interest in the trust as much as possible, in order to gain benefit of the marital deduction and yet control who ultimately would receive the corpus after the wife's death. In this view, the donor hopes the spouse will fail to comply with the requirement, and the specific reference requirement is a means of foiling the spouse's exercise of the power. This was the case in First National Bank of McMinn County v. Walker, supra, where the facts showed the donor intended to limit his wife's access to the corpus. She apparently had no right to invade the corpus during her lifetime, and, more important, the donor had been advised when he executed his last will and testament that his wife's general reference in her existing will would be ineffective if he required a specific reference. The donor nevertheless required the specific reference.
It has been said that when the donor's intent is unambiguous from the four corners, we will not go outside the instrument to determine the donor's intent. See Taylor v. Hutchinson, 17 Ariz. App. 301, 497 P.2d 527 (1972). In any event, the trust agreement as a whole provides at least strong evidence that Oscar Strobel's purpose in structuring the trusts as he did was to protect Willie Mae Strobel, and that the specific reference requirement was intended to prevent an inadvertent exercise of the power of appointment rather than to defeat the exercise and pass the principal to the residuary beneficiary, Oscar A. Strobel III. For example, if it had been the donor's intent to prevent his wife's use of trust "A", it is highly unlikely that he would have given her the unlimited right to invade the corpus of trust "A" during her lifetime. Cf. Walker, supra. It might even be said he intended to encourage her to invade trust "A" because, if she completely depleted it, she would still receive the income from trust "B". The only restriction on Willie Mae Strobel's lifetime access to the corpus of trust "A"  that her requests be in writing  lends support to a conclusion that the significant purpose served by the donor's imposition of formalities was merely to establish the donee's considered intent. Assuming, arguendo, that extrinsic evidence would be admissible on this question, there is no evidence in the record to support a contrary conclusion.
Furthermore, Strobel's trust agreement made no indirect attempt to curtail Willie Mae Strobel's lifetime use of the corpus, such as by making his son the trustee, as did the donor in Estate of Smith, supra. Strobel generously provided for his son, Oscar A. Strobel III, in trust "B", both by making a small gift to his son out of trust "B" upon his death and by making the son the remainderman of trust "B". Unlike those cases where the wife has only a life estate in the income from the marital trust *220 and the remaindermen were not otherwise provided for, we cannot agree that as a matter of law the trust agreement and the surrounding facts show Strobel intended all of trust "A" to pass eventually to his son. Cf. Walker, 607 S.W.2d at 475. On this record we conclude that the substantial purpose of the specific reference requirement was to ensure a considered appointment rather than to thwart its exercise.
The final question is whether giving effect to Willie Mae Strobel's defective appointment would defeat the donor's substantial purpose. Paragraph Second of Willie Mae Strobel's will makes clear and insistent reference to her general power of appointment over trust "A". Her attempted appointment contrasts starkly with the ineffective attempts to exercise a general power of appointment where the donor required specific reference in Matter of Estate of Smith, supra; First National Bank of McMinn County v. Walker, supra; Holzbach v. United Virginia Bank, 216 Va. 482, 219 S.E.2d 868 (1975); and Estate of Eddy, 134 Cal. App.3d 292, 184 Cal. Rptr. 521 (1982). In those cases the courts held that the donor's specific reference requirement was not satisfied by blanket residuary bequests by which the donee granted all her property, including any property over which she had any power of appointment. Such sweeping, non-specific language was not used here.
The obvious purpose of Paragraph Second of Willie Mae Strobel's will was to exercise expressly and specifically the general power of appointment that she enjoyed over trust "A". Furthermore, in Paragraph Second Willie Mae Strobel not only referred specifically to her general power of appointment over the marital trust, she also made specific and correct reference to the required formality ("provided my Will makes specific reference to such general power of appointment") and to the trust account number (6588A). The only irregularity was the mistaken reference to the donative instrument  an error easily understood considering neither of the "A" trusts was to be established until Strobel's death, and the inter vivos trust made no payments to Willie Mae Strobel until after Strobel's death (Inter Vivos Trust Agreement, Paragraphs Second and Third).
In light of the specific content of the paragraph, the specific references to the general power of appointment, the attempt at the required formality and the use of the proper account number, we conclude that there was ample evidence that the attempted appointment was neither casual nor inadvertent but deliberate and intentional, and therefore satisfied the donor's substantial purpose. Because Willie Mae Strobel clearly intended to appoint the only extant trust "A" to a beneficiary favored by equity and did so in a manner that approximated the donor's required formality, the mistaken reference to the donative instrument does not preclude a court of equity from giving effect to the defective exercise. We therefore conclude that the trial court erred in granting summary judgment in favor of Oscar A. Strobel III.
The portion of the trial court's summary judgment declaring as a matter of law
"that the Will of Willie Mae Strobel dated December 6, 1974, did not exercise the power of appointment under the inter vivos trust of Oscar A. Strobel of December 30, 1966"
is reversed, the court of appeals opinion is vacated and the matter is remanded for proceedings consistent with this decision.
GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.
HOLOHAN, Chief Justice.
I dissent.
NOTES
[1] This, of course, does not explain the failure of Greenwood to appeal the summary judgment against her nor the mysterious alliance between Greenwood and Strobel in support of the summary judgment. We are not so innocent as to believe that such otherwise inexplicable alliances spring into existence without valuable consideration. We are assured, however, by reputable counsel that the issues raised by the appeal are not moot and that whatever agreement has been made is within the bounds of propriety. We believe it best that in the future counsel make sure that the record gives an adequate explanation of why a party has taken a position apparently contrary to his or her own interests.