Argued and submitted September 24, 1997, affirmed February 18, 1998

In the Matter of the C.A. Dillinger Marital Trust;
C.A. Dillinger Residual Trust.

Wardlee SMITH,
*Respondent,*

*v.*

Gary C. BRANNAN,
*Appellant.*

(9512-09152; CA A94729)

954 P2d 1259

John D. Parsons argued the cause for appellant. With him on the briefs was Hagen, Dye, Hirschy & DiLorenzo, P.C.

Kevin O'Connell argued the cause for respondent. With him on the brief was Kevin O'Connell, P.C.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Richardson, S. J.

## DE MUNIZ, P. J.

Petitioner[1] Smith brought a petition seeking instructions, ORS 128.135(2)(c),[2] as to the disposition of the assets of the C. A. Dillinger marital and residual trusts. Respondent Brannan appeals from the court's determination that the assets are to be distributed to petitioner and respondent. On *de novo* review, ORS 19.415(3), we affirm.

In December 1978, Chester Dillinger and Doris Dillinger, husband and wife, each executed a will. Chester's will established marital and residual trusts and gave Doris a general power of appointment over the assets of the marital trust. In her will, Doris exercised the power of appointment, as required by the terms of Chester's will, by specific reference to Chester's will.[3]

Between 1978 and 1988, Doris was diagnosed with Alzheimer's disease. The parties agree that Doris was not mentally competent when, in 1988, Chester executed a new will. Chester's 1988 will expressly revoked his 1978 will and established marital and residual trusts, again giving Doris a general power of appointment of the assets in the marital trust. However, Chester's 1988 will differed from his 1978 will by reducing his beneficiaries from six individuals to two—petitioner and respondent—and distributing his estate equally between them. Chester died in August 1989. Doris died in December 1994, without changing her will.

The language of the power of appointment in Chester's 1988 will was identical to the language in his 1978 will

---

[1] We refer to the parties as they were in the proceeding below. ORAP 5.15.

[2] A trust proceeding was initially filed by Brannan after his discovery of conduct by the trustee that Brannan considered a violation of the trustee's fiduciary duties. Brannan sought an accounting and the removal of the trustee and asserted a claim to surcharge the trustee for losses. The trustee voluntarily resigned, and the original proceeding is unrelated to this appeal.

[3] Doris expressly exercised the general power of appointment:

"All of the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, including the remainder of the marital fund established under Paragraph VI, A, of the Last Will and Testament of my husband, CHESTER ARTHUR DILLINGER, dated the 14th day of December, 1978, hereinafter referred to as my 'residuary estate,' I give, devise and bequeath unto my nephew, GARY BRANNAN[.]"

and qualifies for the unlimited marital deduction under the Internal Revenue Code:[4]

"The marital fund shall be held, applied and distributed by my Trustee on the following terms:

"1.   The net income shall be paid to or applied for the benefit of my wife, DORIS ETHEL DILLINGER, in quarterly or more frequent installments during her lifetime. In addition, my Trustee shall have the authority, in his discretion, to pay to or apply on behalf of my wife, such principal sums as he may determine to be necessary and proper for her maintenance, care, support and reasonable comfort.

"2.   Upon the death of my wife, all the assets of the marital fund then remaining shall be distributed as my said wife shall appoint by her Will *by specific reference to this provision of my Will*, which power she may exercise in favor of her estate, or any other person or other persons. In default of such appointment, or subject to any partial appointment by my wife, the marital fund then remaining or such part thereof as shall not have been appointed by my said wife, shall be added to and become a part of the residuary fund and be subject to the same trust and powers as are hereinafter declared concerning the said residuary fund." (Emphasis supplied.)

Petitioner sought the court's instruction as to the distribution of the trusts' assets contingent on whether Doris

---

[4] The Tennessee Supreme Court explained the role of these powers of appointment in *First Nat. Bank of McMinn County v. Walker*, 607 SW2d 469, 472 (Tenn 1980):

"Powers of appointment play an important role under the marital deduction provisions of the Internal Revenue Code, § 2056. In order to qualify for the marital deduction, the code makes it clear that any property which passes to a spouse without taxation should end up in that spouse's estate and, therefore, cannot be a 'terminable interest.' Thus, under Internal Revenue Code, § 2056(b)(5), if marital deduction property is placed in trust with income for life to the spouse, that spouse must have a power of appointment which will include the trust corpus in the subsequent estate under Internal Revenue Code, § 2041, that is some *general* power of appointment.

"It has become a popular estate planning technique for an owner of property to grant to the spouse a life interest and a general power of appointment in order to qualify for the marital deduction, but, to limit the manner in which it can be exercised. Under existing federal law and regulations, such a restriction does not deprive the power of its general character and, thus, does not defeat the marital deduction. Treasury Regulation, § 20-2056(b)-5(g)(4). Under this arrangement, the residual beneficiary under the will of the original grantor will receive the trust corpus unless the spouse has exercised the power of appointment *exactly* as *directed*." (Emphasis in original.)

had effectively exercised the power of appointment granted to her in Chester's 1988 will. If, as respondent contends, the appointment was exercised, the assets of the marital trust will be conveyed to Doris' estate and distributed in accordance with her will, of which respondent is the sole beneficiary. If the appointment was not exercised, as petitioner argues, the assets of the marital trust will be conveyed to Chester's residual trust and distributed to petitioner and respondent.

The trial court held that the power of appointment had not been exercised. It made the following findings, which essentially summarized petitioner's position in the proceedings below and on appeal: (1) In order to effectively exercise the power of appointment in the 1988 will, Doris was required to refer specifically to the provision of Chester's 1988 will that granted her the power of appointment; (2) Doris' 1978 will exercised the power of appointment granted to her in Chester's 1978 will, which was revoked by his 1988 will; (3) due to Doris' failure to refer specifically to the provision in Chester's 1988 will that created the power of appointment, Doris did not effectively exercise the power of appointment created in the 1988 will; and (4) due to Chester's clear desire to take full advantage of the marital deduction for federal estate tax purposes and clear intent that petitioner and respondent should share equally in his estate, the equitable Rule of Approximation does not cure Doris' failure to exercise the power of appointment granted in the 1988 will.

Respondent first assigns error to the court's ruling that Doris did not effectively exercise the power of appointment in Chester's 1988 will. Respondent accepts as a general principle that, when the donor of a power of appointment prescribes a specific formality for the exercise of the power, there will be no effective appointment in the absence of the donee's compliance with the formalities stated by the donor. *See Restatement (Second) of Property / Donative Transfers* § 18.2 (1986).[5] Respondent contends, however, that the presumptive intent for including a specific reference requirement is to avoid an inadvertent exercise of the power. *See Matter of*

---

[5] We assume, without deciding, that the parties are correct in treating the *Restatement* as correctly stating Oregon law.

*Strobel*, 717 P2d 892, 898 (Ariz 1986) ( "The presumptive purpose of the requirement is to ensure a considered and intentional, rather than an inadvertent exercise of the power."). He argues that the trial court should have considered an affidavit of the attorney who drafted the 1978 wills that shows that Chester included a specific reference requirement for that reason. Respondent contends that Chester used the identical language in his 1988 will, and, therefore, that Chester did not change his purpose for including a specific reference requirement between 1978 and 1988. Respondent argues that the specific reference required Doris to refer to "this provision" of Chester's will, not to "the power," and that Doris complied with that requirement. Thus, respondent reasons, Doris effectively exercised the power when she specifically referred to the "marital fund" provision and to Chester's will.

Petitioner argues that the extrinsic evidence of the drafting attorney is not admissible to show intent because Chester's 1988 will is unambiguous, *see Wood v. Medical Research Foundation of Oregon*, 130 Or App 114, 118, 880 P2d 952 (1994) (when a will is fully integrated and unambiguous, extrinsic evidence is not admissible to establish the testator's intent), but that, even if it were admissible, evidence regarding the purpose for the 1978 provision is not relevant to what Chester's purpose was in 1988. Petitioner contends that the presumptive intent for a specific reference requirement cannot be applied here, where Doris was not competent to exercise the power of appointment in 1988 when Chester granted it to her. Additionally, petitioner argues, respondent's position ignores that the presumptive intent is not the sole reason for a testator to include a specific reference requirement:

> "The facts in other cases have lent themselves to the interpretation that the specific reference requirement expressed the donor's intent to restrict the wife's interest in the trust as much as possible, in order to gain benefit of the marital deduction and yet control who ultimately would receive the corpus after the wife's death. In this view, the donor hopes the spouse will fail to comply with the requirement, and the specific reference requirement is a means of

foiling the spouse's exercise of the power." *Strobel*, 717 P2d at 898.

Petitioner contends that the focus of the inquiry must be on the testator's intent as seen from the entire will. *See Cross v. Cross*, 559 SW2d 196, 208-09 (Mo App 1977) (failure to apply presumptive purpose would require literal interpretation of will that thwarted intention of testator when will is viewed as a whole). Here, petitioner argues, the clearly expressed intent in Chester's 1988 will was to take advantage of the marital deduction and to control the ultimate disposition of his estate, not to prevent an inadvertent exercise of a power of appointment.

■      We agree with petitioner. When Chester executed his 1988 will, he revoked his 1978 will and the grant of a power of appointment to Doris. Doris was incompetent in 1988, and, therefore, an inadvertent exercise of the power of appointment could not occur. Despite that fact, Chester required a specific reference to the provision of his 1988 will granting the power. The presumptive intent that the provision was included to avoid an inadvertent exercise of the power cannot apply to these facts.

Furthermore, we agree that applying the presumptive intent to the provision in Chester's 1988 will would be contrary to his clearly expressed intentions. "The intention of the testator as expressed in the will of the testator controls the legal effect of the dispositions of the testator[.]" ORS 112.227. As noted, Chester's 1988 will expressly revoked his 1978 will, made no reference to Doris' exercise of the power of appointment granted to her in the 1978 will but, instead, required her to refer specifically to the 1988 will to exercise the power. The 1988 will also shows Chester's clear intent that petitioner and respondent should share in his estate.[6]

---

[6] Section V.C.1 stated:

"1.  I specifically direct that the above distribution of the residuary fund to [petitioner] and [respondent] shall be accomplished in a manner which most closely equalizes among the two of them the total distribution that each receives from my estate and my wife's estate and further, taking into account, gifts which each received of which we have made specific record prior to our deaths. It is my specific intention that the total distribution (meaning inter-vivos gifts from myself and my wife and testamentary distributions from myself and my wife to [petitioner] and [respondent]) shall be as nearly equal as

We agree with the trial court that Chester's clear intent in his 1988 will was to take advantage of the marital estate deduction while controlling the disposition of his estate. Applying the presumptive intent in order to find that Doris effectively exercised the power of appointment, as respondent urges, would be contrary to Chester's intent.

Respondent next assigns error to three of the trial court's rulings. We treat them together, as does respondent. Respondent argues that the court erred in determining that the Rule of Approximation did not apply and that Doris did not have the power to exercise after-acquired powers. Respondent also argues that the court erred when it held that the assets of Chester's trusts should be divided between petitioner and respondent instead of being awarded solely to respondent.

■ Initially, we reject respondent's contention that Doris could exercise a power of appointment acquired after the execution of her will. Respondent's position is that, because a will disposes of after-acquired property, after-acquired powers should be similarly treated. Respondent relies on *Restatement (Second) of Property / Donative Transfers* § 17.6 (1986):

> "A manifestation of intent in the donee's will to exercise powers includes powers acquired after the execution of the donee's will, unless the exercise of the after-acquired powers is specifically excluded."

Respondent reasons that, because Chester did not specifically exclude the exercise of after-acquired powers, we should recognize Doris' appointment of the power in her 1978 will. However, even if respondent were correct that after-acquired powers could be recognized, respondent's argument ignores the specificity with which Doris exercised that power in 1978 and the specificity required by Chester's 1988 will.

■ The primary thrust of respondent's position in his final assignments of error is that Doris' failure to satisfy the formal requirements of Chester's 1988 will did not cause the

---

possible when taken as a whole, and it is my intention that the final distribution from the residuary fund herein shall be made in a manner which most closely achieves such equal distribution."

appointment to fail because of the Rule of Approximation. That equitable principle is summarized in *Restatement (Second) of Property / Donative Transfers* § 18.3:

"Failure of an appointment to satisfy the formal requirements of an appointment described in § 18.2, other than those required by law, does not cause the appointment to be ineffective in a court applying equitable principles if:

"(1)  The appointment approximates the manner of appointment prescribed by the donor; and

"(2)  The appointee is

"(a)  a natural object of the donee's affections, or

"(b)  a person with whom the donee has had a relationship akin to that with one who would be a natural object of the donee's bounty[.]"

Petitioner acknowledges that equity permits a court to cure a donee's defective exercise of a power of appointment if the donee's action reasonably approximates the donor's prescribed manner of appointment and the appointee is a member of a favored class. Petitioner contends, however, that equity cannot grant relief if the relief would undermine the accomplishment of the donor's significant purpose, which would happen in this instance.

Both respondent and petitioner address the three-part test set out in *Strobel*, 717 P2d at 896, in determining whether the Rule of Approximation can remedy a donee's defective exercise of a power of appointment: What formality was required; what was the donor's substantial purpose in imposing that formality; and whether the defects in the attempted exercise would defeat the donor's substantial purpose. Respondent argues that the required formality—a reference to "this provision" and "marital fund" of Chester's will—was fulfilled and again urges that Chester intended only to avoid an inadvertent exercise of the power when he included the formality.

Petitioner argues that, under the *Strobel* test, it is "quite apparent" that the Rule of Approximation should not be used to cure the defective exercise of the power of appointment. Petitioner argues that the detail that Doris included in

her will in exercising the grant "demonstrates an understanding [by the Dillingers] that the Specific Reference Requirement contemplated something more than a general reference to the marital fund, as Respondent suggests." Petitioner again argues that Chester inserted the specific reference requirement in 1988 to take advantage of the marital estate deduction, not to avoid the inadvertent exercise of the power, and that application of the Rule of Approximation would defeat Chester's purpose, for the reasons argued in the first assignment of error.

We agree with petitioner that the test for applying the Rule of Approximation does not show that the Rule saves the appointment here. Chester's 1988 will did more than require a general reference to a marital fund; it required a specific reference to the power granted in the 1988 will. As discussed above, the purpose in imposing that formality went beyond ensuring against an inadvertent exercise of the power. Finding that the 1978 exercise of the power "approximated" the requirement in the 1988 will would defeat the purpose of including the requirement. The trial court did not err in holding that the Rule of Approximation did not apply and that Chester's estate should be distributed to petitioner and respondent.

Affirmed.