987 P.2d 822

**In the Matter of Dorothy T. MEYER and Edward T. Meyer Family Trust, and Dorothy T. Meyer First Irrevocable Trust.**

**In the Matter of the Estate of E. Tom Meyer, deceased.**

**Pearl F. Meyer, a former spouse, Appellant,**

**v.**

**Timothy L. Mikolay and Erika K. Meyer, as Co–Personal Representatives designated in the Last Will and Testament of E. Tom Meyer; and Cleveland Clinic Foundation, Appellees.**

**No. 1 CA–CV 98–0527.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 30, 1999.

Rosepink & Estes by David J. Estes and James A. Fassold, Scottsdale, Attorneys for Appellant.

Lewis & Roca, L.L.P. by Susan M. Freeman, George L. Paul and Hope E. Leibsohn, Phoenix, Attorneys for Co–Personal Representatives.

Squire, Sanders & Dempsey, L.L.P. by Donald A. Wall and Kevin J. Bonner, Phoenix, Attorneys for Appellee Cleveland Clinic Foundation.

## OPINION

KLEINSCHMIDT, Judge.

¶1 In 1972, Dorothy T. Meyer created two trusts. One was the Edward T. Meyer Family Trust and the other was the Dorothy T. Meyer First Irrevocable Trust. Dorothy Meyer's son, Edward T. Meyer, was a trustee of both trusts. Both trusts contained a provision giving Dorothy's son a limited power of appointment.

B. Upon the death of Edward T. Meyer, the entire amount, including undistributed income remaining in Trust, shall be distributed to, or in trust for, the issue of Edward T. Meyer, his wife, or the Cleveland Clinic Foundation, in such manner and in such proportions as Edward T. Meyer may appoint in and by his Last Will and Testament, making specific reference to the power of appointment herein conferred upon him. The Trustees shall be protected in relying upon an instrument admitted to probate in any jurisdiction as the Last Will and Testament of Edward T. Meyer. If, within three (3) months after the date of death of Edward T. Meyer, the Trustees have not received any notice of the existence of such Will, then the Trustee may conclusively assume that Edward T. Meyer died intestate.

In default of the exercise of the power of appointment, or insofar as any exercise shall not take effect upon the death of Edward T. Meyer or within three (3) months after his death, or insofar as he may not exercise the power of appointment for all of the assets remaining in Trust, then the entire remaining principal and income not effectively appointed by Ed-

ward T. Meyer shall be held by the Trustees as a Trust, upon the following terms and conditions:

1. The Trustees shall pay all of the net income, not less often than annually, to or among Pearl I. Meyer and the children and grandchildren of Edward T. Meyer, in equal or unequal amounts, as in their sole and sound discretion they deem appropriate for the health, support, maintenance and education of these persons, while taking into consideration their other sources of income and support.

2. The Trustees may, in their sole and sound discretion, pay to or apply for the benefit of Pearl I. Meyer and the children and grandchildren of Edward T. Meyer, in equal or unequal amounts, such amounts of principal as they deem appropriate for the health, support, maintenance and education of these persons, while taking into consideration their other sources of income and support.

3. At such time as Pearl I. Meyer is deceased and no living child of Edward T. Meyer is then under the age of thirty five (35) years, what remains in the trust shall be divided among the issue of Edward T. Meyer per stirpes, and the Trust shall terminate.

¶ 2 In 1995, Edward T. Meyer executed a will. At that time he was divorced from Pearl I. Meyer, and he intended that she receive nothing from his estate when he died. He had five children, one of whom, a daughter, he intended to disinherit. In his will, Edward exercised the powers of appointment, directing that upon his death, the assets of both trusts be distributed to the Cleveland Clinic Foundation. Edward was interested in the clinic, having once been a patient there, and he had at one time been the president of the Foundation's board of trustees.

¶ 3 When Edward died on August 31, 1996, his will still contained the provision exercising his power of appointment in favor of the Foundation. In consideration for receiving $150,000, four of Edward's children signed agreements foregoing the right to contest any provision of Edward's will, including the exercise of the powers of appointment in favor of the Foundation.

¶ 4 Following Edward's death, there was a delay of more than three months in the appointment of a successor trustee for the trusts Dorothy Meyer had created because the two banks identified as successor trustees declined to serve. A successor trustee was needed to document the transfer of the trust assets to file tax returns for the trusts.

¶ 5 One of Edward's sons, Tom Meyer, Jr., eventually agreed to serve as the successor trustee and distribute the trust assets to the Foundation in exchange for a release and indemnity agreement from the Foundation. Instead of distributing the trust assets to the Foundation, and although he had signed the agreement not to challenge his father's exercise of the powers of appointment, Meyer filed a petition seeking the court's approval to disregard the exercise of the powers of appointment and distribute the proceeds of the trusts to Edward's former wife and children. The petition was based on the argument that the transfer of the trust assets had not taken effect within three months of Edward's death so that under the terms of the trust instruments, the assets of the trust passed by default to the former wife and the children.

¶ 6 The co-personal representatives of Edward's estate objected to Meyer's proposed distribution of the trust assets. Edward's former wife joined the action on the side of Tom Meyer, Jr. Shortly thereafter, in October 1997, the co-personal representatives applied to the court for an informal probate of Edward's will. The Foundation and the co-personal representatives of Edward's estate filed motions for summary judgment and Tom Meyer, Jr. filed a cross-motion for summary judgment. The trial court ruled in favor of the Foundation, and this appeal ensued.

## THE APPOINTMENT OF THE ASSETS WAS EFFECTIVE UPON EDWARD'S DEATH WITHOUT THE PROBATE OF THE WILL

¶ 7 A power of appointment is "authority, other than as an incident of bene-

ficial ownership of property, to designate recipients of beneficial interests in property." Restatement (Second) of Property: Donative Transfers § 11.1 (1986). The person who creates the power of appointment is called the donor, and the person who is granted the right to exercise the power is called the donee. The difference between a limited power of appointment and a general power is that with a limited power, the property subject to the power cannot be appointed to the donee himself, nor to his estate, his creditors, nor the creditors of his estate. *Id.* at § 11.4. The donor may place limits on the scope of the donee's authority to exercise the power, and the donee does not own the property subject to the power. 5 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 45.8, p. 514 (Bowe–Parker revision 1962).

¶ 8 The Meyers take the position that there was never an effective exercise of the limited power of appointment because the exercise of the power did not take effect within three months after Edward's death as required by the terms of the trusts. Citing, among other authorities, 95 C.J.S. *Wills* § 310 (1957) and *Gray v. Hutchins,* 150 Me. 96, 104 A.2d 423, 426 (1954), they assert that the general rule is that until a will is probated no title to property passes pursuant to it and none of its provisions have any effect.

¶ 9 The Meyers bolster their argument by pointing to the Restatement (Second) of Property: Donative Transfers § 18.2 cmt. a (1986), which says:

> There are formalities required by law for the transfer of owned property. These formalities, generally speaking, are designed to assure that the transferor intended to make the described transfer. The donee of a power should be required to meet the same formalities for the same reason with respect to a transfer by the means of the exercise of a power.

¶ 10 Having made that point, they argue that if Dorothy Meyer's son's will was not probated within three months, her intent that the property was to pass by default to Pearl and her daughter must be strictly enforced. It is her intent, they say, and not that of the donee that controls. *See In re Estate of Smith,* 41 Colo.App. 366, 585 P.2d 319 (1978).

They also assert that the court should not speculate about what Dorothy's intent would have been had she foreseen that the designated successor trustees would refuse to serve. *See In re Estate of Krokowsky,* 182 Ariz. 277, 896 P.2d 247 (1995).

¶ 11 The parties have not cited, and we have not found, any case from any jurisdiction that holds, one way or the other, that a testamentary power of appointment is not operative unless the donee's will that exercises the power is probated. We do, however, find the arguments of the co-personal representatives and the Foundation persuasive. They primarily rely on Arizona Revised Statutes Annotated ("A.R.S.") section 14–6101 which was adopted from the Uniform Nonprobate Transfers on Death Act section 101 (1991). That statute reads:

> § 14–6101 Nonprobate transfers on death; nontestamentary nature
>
> A. A provision for a nonprobate transfer on death in any insurance policy, contract of employment, bond, mortgage, promissory note, certified or uncertified security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement or other written instrument of a similar nature is nontestamentary.
>
> B. A written instrument is nontestamentary if it contains a provision that:
>
> 1. Money or other benefits due to, controlled by or owned by a decedent before death shall be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later.
>
> 2. Money due to or to become due under the written instrument ceases to be payable in the event of death of the promisee or the promisor before payment or demand.
>
> 3. Any property that is controlled by or owned by the decedent before death and that is the subject of the written instrument passes to a person the decedent des-

ignates either in the written instrument or in a separate writing, including a will, executed either before or at the same time as the instrument or later.

¶ 12  Dorothy Meyer's creation of the power of appointment and Edward's exercise of it appear to fall within the statute. The statute expressly provides that the beneficiary of a nonprobate transfer can be named in a will. Edward, as the trustee, controlled the assets of the trusts before his death. The trusts were the subject of written instruments—the trust agreements. The trust agreements authorized Edward to appoint the assets of the trust in his will. Edward did so, and the trust assets were transferred to the Foundation effective upon his death. Whatever Dorothy's intent was in requiring the exercise of the appointment to "take effect" within three months of Edward's death, such was satisfied because section 14–6101 obviated the need for any probate.

¶ 13  The Meyers disagree that section 14–6101 applies. They say that the trustees and the clinic "have confused the originating document, which is nontestamentary, with the 'separate writing, including a will,' which designates the beneficiary and may be a testamentary document." They point out that certain transfers upon death, like the payment of life insurance proceeds, historically were never subject to probate and other attempted transfers, like alternative payee provisions in a promissory note, historically often failed because they did not conform to the requisites for a valid will. They then say:

the purpose of section 6–101 [of the Uniform Act] and its Arizona counterpart, A.R.S. § 14–6101, was to avoid a conflict between the validity of a beneficiary designation in a life insurance contract and that of similar clauses in other contractual instruments. It cannot be expanded to include the document *exercising* the power of appointment, particularly where, as here, the donor of the power *explicitly instructed* that the power be exercised by will.

¶ 14  We are not persuaded by the Meyers' argument. We can readily understand that Dorothy Meyer might have restricted the exercise of the power of appointment to one by will because she wanted the assurance that her son Edward would defer the decision as to who would receive the assets of the trust for as long as possible. In other words, she might have wanted to ensure that what occurred was in accord with Edward's last thoughts on the subject. It is less certain that Dorothy, or any donor, would be particularly concerned that the exercise of the power be subject to probate.

¶ 15  The Meyers take another tack. They cite the *Arizona Probate Code Practice Manual* section 9.7, which gives the following example of a nonprobate transfer on death:

(4) A promissory note contains a provision that if the payee dies, the note becomes payable to any person to be designated in the payee's will to receive payment. Payee later executes a will designating a named person to receive payment if the note is not paid prior to payee's death.

¶ 16  From this, the Meyers argue

it is not the *exercise of the power of appointment* that is nontestamentary, but the *provision in the document creating the power*. In example (4), it is the provision in the promissory note that permits a nonprobate transfer, such that the note would not be subject to the Statute of Wills and the property to be transferred would not be included in the payee's probate estate. But the will which designates the person to receive payment still must be adjudicated a valid will, as discussed [in an earlier section of the Meyers' brief].

¶ 17  Again, we do not accept the Meyers' argument. Instead, we believe that example 4 supports the co-personal representatives and the Foundation. The promissory note in the example equates with the trust agreements in our case and creates what is, in essence, a power of appointment. The payee in the example equates with the donor in our case, and the asset in both cases passes outside of probate when the payee (donor) dies with a will designating who shall receive the asset.

## THE EXERCISE OF THE POWER WAS EFFECTIVE UNDER EQUITABLE PRINCIPLES

¶ 18   Even if we assume that the exercise of the power of appointment was not effective until the will was probated, there is an alternate reason why the Foundation prevails. The Restatement, (Second) of Property, section 18.3 provides:

Failure of an appointment to satisfy the formal requisites of [the formalities specified by the donor] ... does not cause the appointment to be ineffective in a court applying equitable principles if

(1) The appointment approximates the manner of the appointment prescribed by the donor; and

(2) The appointee is ... a charity.

¶ 19   In *Matter of Strobel,* 149 Ariz. 213, 717 P.2d 892 (1986), our supreme court established a three-part test for determining whether the donee "approximately complied" with what the donor prescribed. First, the court must identify precisely what the donor required. Second, the court must assess the donor's substantial purpose in imposing the requirement. Third, the court must determine whether the defect in the attempted exercise of the power will defeat the donor's substantial purpose. *See id.* at 218, 717 P.2d at 897.

■ ¶ 20   Here, the requirement that the Meyers say was not fulfilled was the donor's direction that the exercise of the power of appointment take effect within three months of the donee's death.

¶ 21   The next question is to identify the purpose of that three-month requirement. We find the requirement puzzling. It provides that in default of the exercise of the power, or insofar as any exercise shall not take effect upon the death of the donee or within three months after his death, the assets shall go to Pearl Meyer and her children. The donor obviously contemplated that the execution of the power by will could take effect immediately upon the death of the donor. There are ways it could be otherwise. One way might be if Edward, in his will, had tried to delay the effect of the transfer of the assets to a date later than his death. Dorothy might have wanted to prevent that. That did not happen here. Did Dorothy intend that the probate of the will had to be opened within three months of the date of the donee's death? If so, why didn't she say so? In any event, the mere opening of probate would not give effect to the exercise of the power. Did she mean that the probate had to be opened and the assets distributed within three months? If that were her intent, nothing would be final until the probate was closed, and she could hardly have expected that such would have occurred within three months. *See* A.R.S. § 14–3803 (all claims against an estate that arose before death must be presented within four months after the date of first publication of notice to creditors); A.R.S § 14–3931 (no petition for an order of complete settlement may be entertained until the time for presenting claims which arose prior to death of decedent has expired); and A.R.S § 14–3933 (personal representative may close estate no earlier than four months after appointment of personal representative).

¶ 22   We conclude that the provision requiring that the appointment take effect within three months of the donee's death makes no sense unless it is read as an attempt to harmonize the default provision of the trust with the related provision allowing the trustees to presume that Edward had not exercised the power if the trustees were not informed of the existence of a will within three months of his death. The intent it appears to express might better be written as, "In default of the exercise of the power of appointment, or insofar as any exercise shall not take effect upon the death of Edward T. Meyer, or in the event that the trustees are not notified of the existence of a will exercising the powers of appointment within three months after his death, then the assets pass to Edward's former wife and to his children."

¶ 23   The fact that three months passed before the donee's will was probated does not defeat the substantial provisions of the trust. Dorothy Meyer clearly intended that her son make the choice as to which of several poten-

tial beneficiaries would receive the assets of the trusts. Edward did everything he could do to effectuate that purpose. The Foundation is a charity so it is appropriate, under the Restatement and *Strobel,* that it receive the assets of the trust.

¶ 24 The judgment of the trial court is affirmed.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and RUDOLPH J. GERBER, Judge.