Daniel **LUMBARD** and **Kimberly**
**Lumbard, Appellants–**
**Plaintiffs,**

v.

**FARMERS STATE BANK,**
**Appellee–Defendant.**

No. 44A03–0310–CV–412.

Court of Appeals of Indiana.

July 26, 2004.

Stacey L. Katz, Joshua A. Burkhardt, Beers, Mallers, Backs & Salin, LLP, Fort Wayne, IN, Attorneys for Appellant Daniel Lumbard.

Bill D. Eberhard, Jr., Cheryl L. Weimer, Eberhard & Gastineau, P.C., La-Grange, IN, Attorneys for Appellant Kimberly Lumbard.

Michael J. Caywood, Dresser, Dresser, Haas & Caywood, P.C., Sturgis, MI, Attorney for Appellee.

## OPINION

BAKER, Judge.

The Sixteenth Century British author Henry Fielding wrote, "If you make money your god, it will plague you like the devil." In this cause, children have been turned against mother and mother against children because of money.

Appellants-plaintiffs Daniel Lumbard (Grandson) and Kimberly Lumbard (Granddaughter) appeal the entry of judgment in favor of appellee-defendant Cyn-

thia Lumbard (Daughter) in this action to construe a trust. Specifically, Grandson claims that the trial court erroneously admitted a purported will at trial as evidence. Moreover, Grandson claims that the powers of appointment given to Vivian G. Lumbard (Grandmother) in two different trust documents were never exercised because Grandmother's will was never probated. Granddaughter contends that only one power of appointment was exercised, while Daughter maintains that both powers of appointment were exercised by Grandmother's purported will. Concluding that admission of the will as evidence cannot be challenged by Grandson and that Grandmother's purported will executed both powers of appointment, we affirm.

### FACTS [1]

The facts most favorable to the judgment reveal that Daughter is the sole child of Kent B. Lumbard (Grandfather) and Grandmother. Grandson and Granddaughter are Daughter's children. On September 10, 1974, Grandfather executed a trust agreement creating two trusts upon his death: the Lumbard Family Trust (Family Trust) and the Vivian G. Lumbard Trust (Vivian Trust). The Vivian Trust was created for use as a marital deduction trust under the federal estate tax code. As much property as possible was to be placed into the Vivian Trust in order to maximize the spousal deduction for estate tax purposes. The Family Trust was to contain the residual property of the marital estate. Grandfather's 160–acre farm in LaGrange County was the primary marital asset.

As part of the Vivian Trust agreement, Grandmother was granted a general power of appointment to appoint the trust's cor-

pus "by her Last Will and Testament." Grandson's App. p. 16. The agreement also provided that if Vivian did not exercise her power of appointment, then the trustee was to "pay over and deliver all of this Trust" to the Family Trust. Grandson's App. p. 16. In a purported will dated June 22, 1985, Grandmother appointed the entire corpus of the Vivian trust to Daughter "in fee simple." Granddaughter's App. p. 30.

The Family Trust agreement also gave Grandmother the authority to appoint the corpus of the Family Trust. However, a will was not required, and, instead, Grandmother could appoint the corpus:

> by language contained in her Last Will and Testament, by Deed, Conveyance, Bill of Sale, Gift, or by any written instrument executed by Settlor's wife which adequately evidences her intent to appoint pursuant to this power. If such power is exercised by her Will, such Will shall control; otherwise the last dated appointment pursuant to this power during her lifetime shall control.

Grandson's App. p. 17.

The Family Trust document also specified that if the exercise of Vivian's power of appointment "fail[ed] for any reason whatsoever," the "Trustee shall hold, administer, and distribute" the net income and principal of the trust. Grandson's App. p. 17. The net income of the trust—as deemed advisable by the trustee—was to be paid to Grandson, Daughter, and Granddaughter, "in that sequence of preferential priority," for the beneficiaries' "care comfort, support and education." Grandson's App. p. 17. The principal of the trust—as deemed advisable by the trustee—was to be paid to Grandson,

---

1. We heard oral argument on June 24, 2004, at Indianapolis. We commend counsel for their arguments and able presentations.

Daughter, and Granddaughter, "in that sequence of preferential priority," for the beneficiaries' "care comfort, support and education." Grandson's App. p. 18. In her purported will, however, Grandmother exercised her power of appointment and bequeathed the property in the Family Trust in this fashion:

> [I]n equal one-third shares to [Daughter, Granddaughter, and Grandson], or to their descendants, per stirpes, and do hereby express my intent for one-third of said assets in the [Family Trust] to go to [Grandson], or he shall receive the farm real estate now held by Shipshewana State Bank as Trustee under said Trust Agreement, whichever amount has the lesser value at the date of my death, and in the sole discretion of my Co–Personal Representatives.

Grandson's App. p. 29.

The Family Trust agreement also provided that, upon Grandson's twenty-fifth birthday—and in case Grandmother's power of appointment had not been exercised—the trustee could distribute "sixty-six and two-thirds per cent" of the trust's assets to Grandson. Grandson's App. p. 18. This provision was intended "to equip Grandson Joseph Lumbard with Settlor's one hundred sixty (160) acre farm in La-Grange County, Indiana." Grandson's App. p. 18. The "thirty-three and one-third per cent" of the property remaining in the trust was to be used for the "care, comfort, and support" of Daughter and Granddaughter. Grandson's App. p. 18. After Daughter and Granddaughter's death, any funds remaining in the "thirty-three and one-third per cent" were to re-vert to the Family Trust to be distributed as contained therein. Grandson's App. p. 18.

Grandfather died in 1981. Grandmother died in 1997 in Florida, but—on advice given by the trustee's attorney to Daughter—her will was never admitted to probate.[2] Because the provisions of the purported will were known to all parties at this time—and because all parties relied on the advice of the trustee's attorney—the property was considered to be held by Daughter, Granddaughter, and Grandson equally as tenants in common.

Apparently, the trustee's attorney questioned whether his advice had been correct[3] inasmuch as on August 29, 2001, Farmers State Bank filed a petition to construe the trust, asking the trial court "to determine the rights and obligations of the remainder beneficiaries." Granddaughter's App. p. 15. On February 13, 2002, all parties jointly signed a stipulation of facts. In July 2002, Grandson and Granddaughter filed separate petitions to construe the trust, and Farmers State Bank withdrew its own petition.[4]

Grandson claimed that Grandmother's purported will was never probated and, thus, was void. Consequently, Grandson urged the trial court to distribute the property in both the Vivian Trust and Family Trust as if neither power of appointment was exercised. This would have resulted in the following steps:

1. All the property in the Vivian Trust would be poured into the Family Trust.

---

2. This fact was developed extensively at oral argument, where the immediate question posed by the panel was, "Why did the will remain unprobated?"

3. The trustee's actions remind us of that oft-quoted saying, "Have you ever discovered that you were only wrong because you *thought* you were wrong, but you were really right all along?"

4. Farmers State Bank did not participate in this appeal.

2. The property in the Family Trust would be divided as follows: Two-thirds to Grandson and one-third to Granddaughter and Daughter. Thus, Grandson would receive two-thirds of the property of both trusts.

Granddaughter claimed that Grandmother's purported will was never probated and, thus, the Vivian Trust's power of appointment was not exercised. However, because the purported will was a "Deed, Conveyance, Bill of Sale, Gift, or . . . any written instrument," Granddaughter argued that the power of appointment with regard to the Family Trust *was* exercised. Grandson's App. p. 17. Accordingly, under the Granddaughter's analysis, the following would have occurred:

1. All the property in the Vivian Trust would be poured into the Family Trust.

2. The property in the Family Trust would be divided as follows: One-third each to Grandson, Granddaughter, and Daughter. Thus, each party would receive one-third of the assets of both trusts.

Daughter claimed that even though Grandmother's purported will was never probated, both powers of appointment were exercised. Daughter argued that the Vivian Trust's power of appointment was exercised because Grandmother exercised the power of appointment in her "Last Will and Testament," and, thus, did all she could while alive to express her intent. Granddaughter's App. p. 29. Additionally, Daughter argued that the Family Trust's power of appointment was exercised because the purported will—even though not probated—was a "Deed, Conveyance, Bill of Sale, Gift, or . . . any written instrument." Grandson's App. p. 17. Consequently, the following would have occurred under Daughter's view:

1. All the property in the Vivian Trust would go to Daughter.

2. The property in the Family Trust would be divided as follows: One-third each to Grandson, Granddaughter, and Daughter. Thus, Daughter would receive the entire corpus of the Vivian Trust and one-third of the property in the Family Trust.

Thereafter, the trial court held a hearing on the petitions on April 15, 2003, and issued findings of fact and conclusions of law on August 25, 2003. Specifically, the trial court found that Grandmother's will "contains her expression of intent to exercise her" powers of appointment and that the lack of the will's admission to probate reflected "the intent of the personal representative." Granddaughter's App. p. 13. Thus, the trial court held that Grandmother effectively exercised her powers of appointment. The result of the trial court's ruling was that Daughter received the entire corpus of the Vivian Trust and one-third of the assets of the Family Trust. Grandson and Granddaughter now appeal.

### DISCUSSION AND DECISION

#### I. Standard of Review

Initially, we note that, upon Grandson's request, the trial court entered findings of fact and conclusions of law under Indiana Trial Rule 52(A). However the parties here agree as to the material facts. Thus, our task on review is to determine whether the trial court properly applied the law to the undisputed facts. *Tincher v. Davidson*, 784 N.E.2d 551, 553 (Ind.Ct.App.2003). Accordingly, we review such questions under a de novo standard. *Id.*

#### II. Admission of Purported Will

Grandson's first claim is that the trial court erroneously admitted Vivian's purported will into evidence. Specifically, Grandson points out that Farmers State

Bank sent a copy of the purported will to the trial court and that the trial court used that document as evidence. However, Grandson also urges that the will should not have been used as evidence by the trial court inasmuch as it was never admitted at trial.

■■■ We first note that decisions regarding the admission of evidence are within the discretion of the trial court. *Jones v. State*, 780 N.E.2d 373, 377 (Ind. 2002). An abuse of that discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or if the trial court's decision is contrary to law. *State v. Willits*, 773 N.E.2d 808, 811 (Ind.2002). We also note that "a party may not generally assume successive positions in the course of the same litigation with respect to the same fact or set of facts which are inconsistent and mutually contradictory." *Gregory and Appel, Inc. v. Duck*, 459 N.E.2d 46, 50 (Ind.Ct.App.1984).

■■■ Here, we acknowledge, as contended by Grandson, that Vivian's purported will was submitted by Farmers State Bank's attorney, Fredrick J. Hartz. Hartz's transmittal letter—included in Grandson's own appendix—shows that the submission was done at the trial court's request. Appellant's App. p. 24. Interestingly, the Vivian Trust and Family Trust documents—neither of which was admitted at trial as evidence—were also included in this submission.

Grandson's argument that Grandmother's will should not have been referenced by the trial court because it was not admitted into evidence is undermined by his continued references to the Vivian Trust and Family Trust documents, both of which were included in his appendix. As mentioned, neither of these documents were admitted as evidence at trial. As

observed by Daughter, since none of the crucial documents were admitted as evidence, this court "must either include or exclude all of this documentary evidence," the result of which will be to remand this case to the trial court, await the admission of the evidence, and anticipate an appeal to this court for a consideration of the merits of the parties' arguments. Appellee's Br. p. 18.

Fortuitously, we need not exclude all of the documentary evidence inasmuch as Grandson is estopped from advocating its exclusion. Here, Grandson is taking contradictory positions with regard to different documents within Hartz's submission even though none of the submission's documents were formally admitted into evidence. Grandson cannot be heard to complain that one document from the Hartz's submission should never have been referenced because it was not admitted into evidence while at the same time repeatedly referencing another document containing the same defect. *See Duck*, 459 N.E.2d at 50. As a result, Grandson's claim must fail.

### III. *Indiana Code Section 29–1–7–15.1(d)*

■■■ Moving to the arguments regarding the will itself, all parties agree that Grandmother's will was never probated and cannot now be admitted to probate because Indiana Code section 29–1–7–15.1(d) requires that a will be admitted to probate, if at all, within three years of the decedent's death. Indiana Code section 29–1–7–15.1(d) reads, in relevant part, "If letters testamentary or of administration are not taken out upon a decedent's estate within three (3) years after the decedent's death, the will of the decedent shall not be probated." Furthermore, Grandson points out that Indiana Code section 29–1–7–24 renders a non-probated will ineffective.

Thus, Grandson contends, the existence of Grandmother's will is of no consequence as to either trust because a will either "meets the legislative requirements or it is void." *Keener v. Archibald,* 533 N.E.2d 1268, 1270 (Ind.Ct.App.1989). Daughter, however, claims that Grandmother's wishes as to the power of appointment were "clearly and validly set forth in her Will," Appellee's Br. p. 8, and, accordingly, must be honored.

■ The virtue of the three-year statute of limitations on the presentment of wills is that "questions as to testacy may be eliminated simply by the running of time," thereby ensuring that property is freely alienable within a reasonable period. Uniform Probate Code § 3–101 (1998). Thus, at the end of the three-year period, the decedent's property may be distributed under the intestacy statutes without the worry of subsequent litigation raised by a late-discovered will. Moreover, the three-year statute of limitations allows interested parties to investigate whether the testator could have been incompetent when the will was executed or the subject of undue influence. *Troxel v. Troxel,* 737 N.E.2d 745, 748 (Ind.2000) (holding that one justification for a will statute of limitations is to "accurately represent the wishes of the decedent").

Here, no party is attempting to probate Grandmother's purported will. Moreover, the reason for Indiana Code section 29–1–7–15.1(d) simply does not exist here because the property at issue is not being distributed via the intestacy laws inasmuch as the trust agreements specifically provide for their allocation. Finally, no party has ever alleged that Grandmother was incompetent when executing her will or that she was subject to undue influence. In sum, the reasons for Indiana Code section 29–1–7–15.1(d) simply do not exist in this case and, thus, that statute does not apply here. Accordingly, while Grandmother's purported will has no force *as a will,* it certainly expresses her desires as to the trust property and may be used to determine her intent.

### IV.  Vivian Trust

■ Grandson and Granddaughter claim that Grandmother's attempt to exercise her power of appointment under the Vivian Trust was void because the trust document itself requires that she exercise her power "by her Last Will and Testament." Grandson's App. p. 16. Accordingly, Grandson and Granddaughter note that Grandmother never had such a "Last Will and Testament" because her purported will was never admitted to probate and, thus, any purported will may be given no effect whatsoever. Daughter claims that Grandmother executed her will, that two persons witnessed her execution thereof, and that the only reason the will was never probated was because the trustee's attorney advised her not to submit the will to probate.

As we have already stated, Indiana Code section 29–1–7–15.1(d) does not bar the use of the purported will to determine Grandmother's intent with respect to the Vivian Trust because the reasons for Indiana Code section 29–1–7–15.1(d)—to ensure that intestacy distribution is protected and that the testator was competent—do not exist here. Moreover, as was developed at oral argument, before the trustee sought judicial intervention, all parties understood that Grandmother's will demonstrated her intent.

We are not the first jurisdiction to consider whether a purported will attempting to exercise a power of appointment may be considered regardless of its admission to probate. The Arizona Court of Appeals, in *Matter of Meyer,* 195 Ariz. 336, 987 P.2d 822 (App.1999), reviewed a case in which a trust with a power of appointment existed.

To exercise that power of appointment, Meyer had to do so in a will that was admitted to probate within three months of his death. Meyer executed a will, including a section exercising his power of appointment, granting title to the property in the trust to a non-profit clinic. After Meyer's death, however, his will was not admitted to probate within the requisite three months. The clinic sought possession of the property in trust, and the trial court entered summary judgment for the clinic. On review, the *Meyer* court held that Meyer's mother—who funded the trusts—"clearly intended that her son make the choice as to which of several potential beneficiaries would receive the assets of the trusts." *Id.* at 827–28. Thus, the *Meyer* court used both Meyer's mother's trust document and Meyer's unprobated will to determine their intent. The trial court was affirmed.

Here, while it is true that Grandmother's purported will was not admitted to probate, it was titled "LAST WILL AND TESTAMENT," Granddaughter's App. p. 29, and was signed and witnessed. The document expresses Grandmother's desire that Daughter receive "all of said property" in the Vivian Trust. Granddaughter's App. p. 29. Moreover, we are convinced by the reasoning of the *Meyer* court that the purported will—though not probated *as a will*—may be used to determine whether a power of appointment was exercised. In sum, Grandmother did all she could do while alive to express her intent to exercise her power of appointment over the Vivian Trust. The fact that the trustee's attorney correctly construed Grandmother's actions initially but then second-guessed himself does not affect Grandmother's expression of her intent. As a result, the trial court did not err in holding that the purported will exercised the power of appointment granted over the Vivian Trust.

## V. Family Trust

■ As to the Family Trust, Grandson makes a similar argument as that made with regard to the Vivian Trust. Specifically, Grandson claims that the power of appointment in the Family Trust was never exercised because Vivian attempted to exercise the power by using a testamentary document—a purported will—that was never probated. Daughter and Granddaughter, however, note that the Family Trust document—unlike the Vivian Trust document—allowed Vivian to exercise her power of appointment using a "Deed, Conveyance, Bill of Sale, Gift, or by any written instrument executed by [Vivian]." Grandson's App. p. 17. Thus, Daughter and Granddaughter claim that the Family Trust document allowed for a greater variety of methods of exercise of its power of appointment.

Because we find Grandson's claim with respect to the purported will exercising the power of appointment over the Vivian Trust is unavailing, that argument is no more successful with respect to the Family Trust. As in the case of the Vivian Trust, the reasons for Indiana Code section 29–1–7–15.1(d) do not exist in this case. Moreover, the Family Trust document specifically allows a greater range of documents to exercise the power of appointment. As was discussed at oral argument, Grandmother could have exercised her power of appointment by stating her intentions on a paper napkin.

The uncontroverted evidence shows that the purported will, signed by Grandmother and witnessed by two persons, was a "Deed, Conveyance, Bill of Sale, Gift, or by any written instrument executed by [Grandmother]." Grandson's App. p. 17. Moreover, as previously stated, no charge of undue influence or incompetence has ever been lodged. Consequently, we must

conclude that Grandmother successfully exercised her power of appointment over the Family Trust.

## CONCLUSION

In light of the issues addressed, we conclude that the trial court did not err in admitting Vivian's purported will into evidence. Moreover, we conclude that the trial court properly found that Vivian exercised her power of appointment under the Vivian Trust because our statute of limitations with respect to wills does not bar the introduction of a purported will to demonstrate that a power of appointment has been exercised. Additionally, the trial court did not err in finding that the exercise of the power of appointment under the Family Trust was exercised because Grandmother's will was a "written document." As a result of our decision, Daughter shall receive all property in the Vivian Trust. Daughter, Granddaughter, and Grandson shall each receive one-third of any property remaining in the Family Trust. Grandson's share, however, is limited to the lesser of one-third of the property remaining in the Family Trust or Grandfather's land—if any—held in the Family Trust.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.